Fred Simpson, Esq.
CAPP, JENKS & SIMPSON, P.C.
1821 S. Avenue W., Suite 400
Missoula, MT 59801
Telephone: (406) 549-2322
Facsimile: (406) 549-2707
Email: fsimpson@cjs.legal

Kevin M. Lougachi, Esq. (*pro hac vice*)
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
150 S. Wacker Drive, Suite 1700
Chicago, IL 60606
Telephone: (312) 431-3700
Facsimile: (312) 431-3670
Email: klougachi@karballaw.com

*Attorneys for Plaintiff,*
*Rochdale Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| ROCHDALE INSURANCE COMPANY, | ) ) ) | CV 19-68-M-DWM |
| Plaintiff, | ) ) | **ROCHDALE INSURANCE COMPANY'S COMBINED BRIEF** |
| vs. | ) ) | **IN RESPONSE TO DIXON'S CROSS-MOTION FOR SUMMARY** |
| SKYLAR DIXON, and FELDER & COMPANY, LLC, DBA STILLWATER FISH HOUSE, | ) ) ) ) | **JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON COUNT I OF ITS FIRST** |
| Defendants. | ) ) | **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** |

# TABLE OF CONTENTS

I.    **INTRODUCTION** ............................................................................1

II.   **ARGUMENT** ...................................................................................3

    A.    AMERICAN HALLMARK DEFENDED FELDER IN THE UNDERLYING LAWSUIT AND PAID $600,000 TO SETTLE DIXON'S CLAIMS. .............3

    B.    MONTANA CASES ADDRESSING THE MEANING OF "ARISING OUT OF AND IN THE COURSE OF EMPLOYMENT," WORKERS COMPENSATION COVERAGE AND TRAVEL-RELATED ACCIDENTS ARE DIRECTLY RELEVANT TO THE ISSUES IN THIS CASE. ................5

    C.    THE EL SECTION OF ROCHDALE'S POLICY IS NOT AMBIGUOUS AND SHOULD BE ENFORCED AS WRITTEN. ...........................................9

        i.    THE PHRASE "ARISE OUT OF EMPLOYMENT" IS NOT AMBIGUOUS AND MEANS HAVING A "REASONABLE CONNECTION" WITH EMPLOYMENT. .....................................10

        ii.    THE PHRASE "IN THE COURSE OF EMPLOYMENT" IS NOT AMBIGUOUS AND REFERS TO A WORKPLACE INJURY. ...........13

        iii.    THE WORD "EMPLOYMENT" IS NOT AMBIGUOUS AND REFERS TO A PERSON WHO HAS A JOB PERFORMING WORK FOR THE NAMED INSURED'S BUSINESS. .......................22

    D.    THE EVIDENCE SURROUNDING DIXON'S ACCIDENT SUPPORTS THE ENTRY OF SUMMARY JUDGMENT FOR ROCHDALE. .................24

III.   **CONCLUSION** .............................................................................30

**CERTIFICATE OF COMPLIANCE** .................................................................31

**CERTIFICATE OF SERVICE** ..........................................................................32

# TABLE OF AUTHORITIES

CASES

*Am. Railcar Indus. v. Hartford Ins. Co.*,
   2016 U.S. Dist. LEXIS 35196 (E.D. Mo. Mar. 18, 2016) ................................6, 16

*Am. States Ins. Co. v. Flathead Janitorial & Rug Servs.*, 2015 MT 239,
   380 Mont. 308, 355 P.3d 735 ............................................................ 15-16, 20, 22

*Bhd. Mut. Ins. Co. v. Ludwigsen*, 2018 U.S. Dist. LEXIS 150186
   (S.D.N.Y. Sep. 4, 2018) ........................................................................................20

*Bryant* v. *Fissell*, 84 N.J.L. 72 (N.J. 1913)...............................................................16

*Devine v. Great Divide Ins. Co.*, 350 P.3d 782 (Alaska 2015)................................11

*Grider v. City of Auburn*, 618 F.3d 1240 (11th Cir. 2010).......................................20

*Griffin v. Industrial Acc. Fund*, 111 Mont. 110, 106 P.2d 346 (1940)....................13

*Heath v. Montana Mun. Ins. Auth.*, 1998 MT 111, 288 Mont. 463,
   959 P.2d 480.......................................................................................................8, 13

*Hetland v. Magnum Petroleum*, 225 Mont. 389, 733 P.2d 343 (1987) ................. 8-9

*Hicks v. Glacier Park*, 236 Mont. 113, 768 P.2d 346,
   1989 Mont. LEXIS 32 (1989) ............................................................. 9, 17, 21, 24

*Hicks v. PGA Tour, Inc.*, 897 F.3d 1109 (9th Cir. 2018) .........................................23

*Krushwitz v. McDonald's Restaurants*, 919 P.2d 465 (Ore. 1996) .........................29

*Landeen v. Toole County Ref. Co.*, 85 Mont. 41, 277 P. 615 (1929) ... 15, 16, 19, 22

*Lucas v. Lucas*, 212 Va. 561 (Va. 1972)............................................................ 16-17

*Meeks v. Miller*, 956 So. 2d 864 (Miss. 2007).........................................................22

*Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2,
   341 Mont. 33, 174 P.3d 948 ..................................................................................7

*Newbury v. State Farm Fire & Cas. Ins. Co.*, 2008 MT 156,
   343 Mont. 279, 184 P.3d 1021 ............................................................. 7-8, 15, 24

*Pablo v. Moore*, 2000 MT 48, 298 Mont. 393, 995 P.2d 460 .......................... 11, 12

*Pinyerd v. State Comp. Ins. Fund*, 271 Mont. 115,

    894 P.2d 932 (1995) ............................................................ 5, 11, 12, 14, 16, 19, 22

*Shaver v. Indep. Stave Co.*, 350 F.3d 716 (8th Cir. 2003) .......................................28

*State Farm Mut'L. Auto. Ins. Co. v. Skones*, 2001 ML 2564,

    2001 Mont. Dist. LEXIS 3694 ..................................................................21

*Stringer v. Minn. Vikings Football Club, LLC*, 705 N.W.2d 746

    (Minn. 2005)...................................................................................... 21-22

*Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50,

    326 Mont. 174, 108 P.3d 469 ....................................................... 16, 20

*Troutt v. Colo. W. Ins. Co.*, 246 F.3d 1150 (9th Cir. 2001)......................... 10, 11, 12

*Voorhies v. Park Cafe*, 175 Mont. 232, 573 P.2d 202 (1978) ...................................9

*Weeks v. State*, 1999 Mont. Dist. LEXIS 1121 .......................................................15

## STATUTES

Mont. Code Ann. § 39-51-203(1) ...............................................................23

Mont. Code Ann. § 39-71-119(3)-(5) ...........................................................8

Mont. Code Ann. § 39-71-401(2) ..................................................................8

Mont. Code Ann. § 39-71-407(1) ...............................................................7, 12

Mont. Code Ann. § 39-71-407(4)(a)..............................................................8

## RULES

Fed. R. Civ. P. 56(a)...................................................................................1

Fed. R. Civ. P. 56(c)(2), (4) .......................................................................28

L.R. 56.1(b)(1)(B).....................................................................................26

## OTHER AUTHORITIES

Black's Law Dictionary (10th ed. 2014) ............................................... 20, 23

# I.    INTRODUCTION

Plaintiff Rochdale Insurance Company ("Rochdale") submits this Combined Response/Reply Brief in Support of its Motion for Summary Judgment ("Motion") and in opposition to Defendant Skylar Dixon's Cross-Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a).  As discussed below, Rochdale is entitled to summary judgment in its favor and against Defendants Felder & Company, LLC dba Stillwater Fish House ("Felder") and Skylar Dixon ("Dixon"), with the Court declaring that no coverage exists under the Workers Compensation and Employers Liability policy ("Policy" or "WC/EL Policy") that Rochdale issued to Felder in connection with an underlying lawsuit pending in the Eleventh Judicial District Court of Flathead County, Montana, bearing case caption: *Skylar Dixon v. Felder & Company, LLC dba Stillwater Fish House*, Cause No. DV-17-853D (the "Underlying Lawsuit").

In Dixon's Brief, he attempts to convince this Court that the Employers Liability Insurance section ("EL Section") of Rochdale's Policy is ambiguous and that it should be construed to provide coverage for the Underlying Lawsuit. However, the language at issue is clear and free from doubt as it limits coverage to an injury that "arise[s] out of and in the couse of the injured employee's employment."  Courts have found that this language means that an injury must have

a "reasonable connection" with the injured employee's employment, *and* that the injury must occur while the employee is working for his or her employer.

Dixon, however, was not working for his employer, Felder, at the time of his accident.  Instead, he was driving home with another employee after finishing his normal work shift.  In fact, Dixon does not dispute any of the basic facts surrounding his accident, which places his claim squarely outside of the EL Section of the Policy.  That is especially true since Montana's courts have repeatedly found that an injury which occurs normal during travel to and from work does not "arise out of or in the course of employment."

For that reason, Dixon argues that Montana case law interpreting the language at issue in the context of workers compenation and the "going and coming" rule should not be considered in this case.  However, workers compensation coverage under the Policy conforms to Montana's Workers Compensation Act ("WC Act") with respect to the compensability of employment claims, and under Montana law both coverages under the Policy should be interpreted in the same manner.  Furthermore, cases which address the same language that is at issue in this case in the context of coverage for travel-related injuries to employeees are directly relevant to the issues before the Court since this case involves a travel-related accident.

To avoid this defect, Dixon argues that three ambiguities exist in the Policy's language.  In short, he asserts that the phrases "arise out of" and "in the course of"

are ambiguous, in addition to the word "employment."  However, the Supreme Court of Montana has already found that both phrases have a well understood meaning in the context of an employment accident, and the court did not find either phrase ambiguous.  Similarly, the word "employment" is not ambiguous as it has an existing meaning under the law.  Nor was the word meant to be read independently of the other terms in the Policy, but in conjunction with all of them  to give the enitre Policy meaning as a whole.

Finally, Dixon asserts that absent coverage from Rochdale he will be deprived of a recovery for his injuries.  However, Dixon recovered a substantial amount of money already from two separate insurance policies, one of which was a CGL policy covering Felder's business.  As a result, his request that the Court read the Policy to provide coverage where it would otherwise not exist should be rejected.  In short, Rochdale's Policy was only meant to provide coverage for a workplace injury, and an accident which occurs during travel to and from work does not meet that threshhold since it does not "arise out of and in the course of employment."

## II.    ARGUMENT

### A.    American Hallmark Defended Felder In The Underlying Lawsuit And Paid $600,000 To Settle Dixon's Claims.

As an initial point of contention, Dixon argues that Felder's commercial general liability insurer, American Hallmark Insurance Company of Texas ("American Hallmark"), denied coverage for Dixon's claims against Felder in the

Underlying Lawsuit in a June 7, 2018 letter.  Doc. 28, p. 10, ¶ 20.  In fact, American

Hallmark reserved its rights and *agreed* to defend Felder in the Underlying Lawsuit:

> After reviewing the Complaint and the Policy, we have
> determined there are questions as to whether Hallmark is
> obligated under the Policy to defend or indemnify [Felder]
> for the allegations in the Complaint. . . Hallmark will agree
> to participate in [Felder's] defense; however, Hallmark
> specifically reserves its rights with respect to coverage and
> defense issues as addressed further below.

Doc. 28-2, pp. 1, 23-24.  Thus, there is simply no merit to this contention, especially

since Dixon and Felder already admitted in their Answers that American Hallmark

defended Felder in the Underlying Lawsuit.  Doc. 14, p. 6, ¶ 25; Doc. 15, p. 6, ¶ 25.

Next, Dixon makes the following additional inaccurate and misleading

representations:

- "[He] is now left with no remedy but to seek coverage under [Rochdale's
  Policy] in an effort to seek remuneration for the catastrophic injuries he
  suffered."

- "[He] would have been left without remedy if not for the availability of
  coverage under the [Rochdale Policy]."

Doc. 29, p. 18.  A review of the Answers filed by Felder and Dixon reveal that these

representations are not accurate as both of them have admitted that American

Hallmark paid to settle Dixon's claims against Felder.  Doc. 14, p. 6, ¶ 26; Doc. 15,

p. 6, ¶ 26 ("As to the first sentence, Defendant Dixon admits that by December 13,

2018, Dixon had entered a partial settlement with Felder and that partial settlement amount was paid by American Hallmark.").

Indeed, American Hallmark paid Dixon $600,000 under his settlement with Felder. Doc. 35, p. 3 and Exhibit A. Dixon also recovered the per person limit under the driver's, Noah Gillund ("Gillund"), automotive policy. Doc. 28-1, p. 31. Consequently, Dixon's arguments concerning American Hallmark are totally unsupported by the record and granting Rochdale relief will not leave him without a recovery by any means.

**B.    Montana Cases Addressing The Meaning Of "Arising Out Of And In The Course Of Employment," Workers Compensation Coverage And Travel-Related Accidents Are Directly Relevant To The Issues In This Case.**

Dixon next argues that this Court should not consider any Montana legal authority which addresses the phrase "arising out of and in the course of employment" or workers compensation coverage for an employee's injury during travel to and from work. Doc. 29, pp. 14-15, 20-21. Per Dixon, none of the cases that Rochdale cited apply to the present dispute unless they address employer's liability coverage. Dixon, however, undermines this argument by relying on *Pinyerd v. State Comp. Ins. Fund*, 271 Mont. 115, 894 P.2d 932 (1995), a workers compensation case, for his contentions regarding the meaning of the policy language in this case, as well as the pertinent analysis consisting of a review of the facts and

circumstances surrounding his accident.  Doc. 29, pp. 19, 23.  Thus, even Dixon

understands the relevance of this case law.

Nonetheless, the court in *Am. Railcar Indus. v. Hartford Ins. Co.*, addressed

similar arguments in the context of whether coverage existed for an accident under

the EL Section of a policy identical to the one at issue in this case and found that:

> ARI argues that whether an employee is acting in the course of employment is different in the context of Arkansas workers' compensation statutes and under Arkansas common law. … The Court has found no support for this proposition. It has found no case law holding that the contractual phrase "in the course of the injured employee's employment" in Part Two of the policy should be interpreted differently from the identical phrase in Arkansas workers' compensation statutes. It would be inconsistent if Part One of the policy defined "course of employment" under the workers' compensation statutes as providing no coverage for employee breaks; but Part Two of the policy defined "course of employment" under Arkansas common law as providing coverage for employee breaks. Because the language in Part One as borrowed from Arkansas workers' compensation statutes and Part Two is the same, the Court will give it the same interpretation.

2016 U.S. Dist. LEXIS 35196, **17-18 (E.D. Mo. Mar. 18, 2016).  The *Am. Railcar*

court went on to find that the employee's injury did not occur "in the course of

employment" because he was on a break and not performing any duties for his

employer at the time of the accident.  *Id* at 18-19.

Here, Dixon offers no legal authority to support his contention that Montana

precedent addressing the phrase "arising out of and in the course of employment" in

the context of workers compensation coverage for employment and travel-related accidents is not directly relevant in the present dispute.   In fact, workers compensation coverage under the Policy conforms to Montana's WC Act, including the right to benefits payable thereunder.   Doc. 13-3, pp. 8-9 (General Section, Paragraph C. Workers Compensation Law; and Part One Workers Compensation Insurance, Paragraph B. We Will Pay, and Paragraph H. Statutory Provisions).   In turn, under Mont. Code Ann. § 39-71-407(1) the right to benefits is subject to an employee's "injury arising out of and in the course of employment."   Thus, coverage under the Workers Compensation Insurance section of the Policy ("WC Section") is controlled by, and subject to, an "injury arising out of and in the course of employment" pursuant to § 39-71-407(1).

Likewise, as coverage under the EL Section of the Policy is subject to virtually identical language as the WC Section, it would be inconsistent to interpret one section of the Policy different from any other section when the lanaguge at issue in both sections is the same.   *Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2, ¶ 36, 341 Mont. 33, 43, 174 P.3d 948, 957 ("The contract must be read as a whole … and identical terms must be given the same meaning and construction throughout the policy.").   Nor does Dixon offer any legal authority which would support construing the language in the EL Section in a different manner from any other part of the Policy.   *Newbury v. State Farm Fire & Cas. Ins. Co.*, 2008

MT 156, ¶ 19, 343 Mont. 279, 283, 184 P.3d 1021, 1025 (an insurance policy must be read as a whole to give meaning and effect to each of its terms).

The WC Act also speaks to coverage under the EL Section.  For example, the WC Act excludes certain fields from workers compensation, thereby raising the possibility of coverage under the EL Section.  Mont. Code Ann. § 39-71-401(2).  As well, certain injuries not covered under the WC Act may fall within the EL Section's coverage.  Mont. Code Ann. § 39-71-119(3)-(5).

Dixon nonetheless attempts to make a distinction related to the "going and coming" rule in Mont. Code Ann. § 39-71-407(4)(a), but he similarly confuses the fact that the statute controls when it comes to compensability for benefits under the WC Act and the WC Section of Rochdale's Policy.  *See, e.g., Heath v. Montana Mun. Ins. Auth.*, 1998 MT 111, 288 Mont. 463, 959 P.2d 480 (addressing insurer's denial of coverage based on "going and coming" rule for a police dispatcher injured while traveling to work).  As noted above, the Policy conforms to the WC Act as it relates to receiving benefits, which includes § 39-71-407(4)(a) since it acts to bar benefits for claims involving travel to and from work.

Furthermore, Montana cases addressing the phrase "arising out of and in the course of employment" in the context of employees injured traveling to and from work are directly relevant to the present case which involves the same language and factual issues.  *See, e.g., Heath*, 959 P.2d 480; *Hetland v. Magnum Petroleum*, 225

Mont. 389, 390-92, 733 P.2d 343, 345 (1987); *Voorhies v. Park Cafe*, 175 Mont. 232, 573 P.2d 202 (1978).  Nonetheless, other workers compensation cases which address the same operative language are similarly relevant to the present dispute because they involve the same analysis – evaluating the facts and circumstances surrounding an accident to ensure that both conditions are satisfied such that the injury in question actually "[arose] out of and in the course of employment." *Hicks v. Glacier Park*, 236 Mont. 113, 115-16, 768 P.2d 346, 347-48 (1989) ("*Glacier Park*").

In sum, based on the policy language and the facts at issue in this case, Montana legal authority addressing the meaning of "arising out of and in the course of employment," workers compensation coverage, and travel-related accidents are directly relevant to whether coverage exists for Dixon's injuries.  Therefore, his arguments otherwise should be rejected.

## C.     The EL Section of Rochdale's Policy Is Not Ambiguous And Should Be Enforced As Written.

Dixon's primary argument on summary judgment is that the Policy's EL Section is ambiguous and should be construed to provide coverage where it otherwise would not exist.  Doc. 29, pp. 10-16.  Dixon asserts that no less than three separate ambiguities are present in the following sentence from the EL Section:

> 1.  The bodily injury must arise out of and in the course of
>     the injured employee's employment by you.

Doc. 13-3, p. 9.  Specifically, Dixon contends that ambiguities exist with the phrases "arise out of" and "in the course of," as well as the word "employment."  By way of these contentions, Dixon is asking this Court to interpret two separate terms of art ("arise out of employment" and "in the course of employment") to mean the same thing – that an injury only needs to have "a connection with" employment – even though that construction would read one of those terms completely out of the policy and violate Montana's rules of contract interpretation.

As discussed below, however, courts in Montana and outside of the state have interpreted nearly identical language to mean that an injury must not only have a "reasonable connection" with employment, but that the injury must also occur during that employee's performance of work for an employer.  Consequently, there is no merit to Dixon's arguments regarding the interpretation of the language in the EL Section of Rochdale's Policy.

### i.    The Phrase "Arise Out Of Employment" Is Not Ambiguous And Means Having A "Reasonable Connection" With Employment.

Although Dixon asserts that the phrase "arise out of" in the EL Section of Rochdale's Policy is ambiguous, he provides little in the way of explanation for this contention beyond his reliance on case law addressing similar phrases in situations which are not analogous to the present case.  Doc. 29, pp. 10-13.  For example, Dixon relies on *Troutt v. Colo. W. Ins. Co.*, 246 F.3d 1150, 1160 (9th Cir. 2001), for the proposition that the phrase "arising out of" in a liquor liability policy is ambiguous,

even though *Troutt* did not involve a WC/EL Policy modeled after state workers compensation statutes. *See, e.g., Devine v. Great Divide Ins. Co.*, 350 P.3d 782, 787 (Alaska 2015) (addressing scope of coverage under WC/EL Policy using the sentence "arising out of and in the course of employment").

Similarly, Dixon relies on *Pablo v. Moore*, 2000 MT 48, 298 Mont. 393, 995 P.2d 460, for the proposition that "arising out of" is ambiguous. Doc. 29, pp. 12-13. However, *Pablo* addressed the phrase as it appeared in two exclusions in a motor vehicle policy, not a WC/EL Policy. 298 Mont. at 395-96. The court found that the phrase "arising out of" should only apply to those theories of liability asserted by the underlying plaintiff which were listed within each exclusion. *Id.* at 399-400. Since neither exclusion addressed claims for negligent hiring, training, and supervision or negligent failure to warn, the court found that they did not bar coverage for those specific claims. *Id.*

With that said, the *Troutt* court recognized that the Supreme Court of Montana had already addressed the meaning of the phrase "arising out of" in the context of workers compensation for a workplace injury and found that it means having "some reasonable connection with" a claimant's employment. 246 F.3d at 1160 (quoting *Pinyerd*, 894 P.2d at 935). Importantly, the *Pinyerd* court did <u>not</u> find the phrase ambiguous, but instead recognized that "arising out of employment" means that "there must be *some reasonable connection between the injury suffered and the*

*employment or the conditions under which it is pursued.*"   894 P.2d at 934-35 (emphasis in original).   Thus, the court found that "arising out of employment" already had a recognized and accepted meaning in the context of a workplace injury and applied it to determine whether the injury at issue – a workplace assault involving two employees – had arisen out of the injured employee's employment or a personal matter that was independent of his employment.  *Id*. at 934-36.

Considering *Pinyerd*, Dixon's reliance on *Troutt* and *Pablo* as a basis for this Court to find that the phrase "arising out of employment" means having a "reasonable connection" with employment is misplaced since that is *already* the law of Montana under *Pinyerd*.   Thus, under *Pinyerd*, the phrase "arise out of employment" in Rochdale's Policy is not ambiguous, and since it is the first of two separate conditions placed on coverage, just as in Mont. Code Ann. § 39-71-407(1) in the WC Act, this language means that Dixon's injury must have had a "reasonable connection" with his employment.

Not surprisingly, Dixon attempts to bring himself within *Pinyerd's* holding on the meaning of "arising out of employment" by asserting that his injuries "were reasonably connected to the conditions under which he pursued his employment." Doc. 29, pp. 19, 23-24.  In particular, he asserts that this standard is satisfied since he could not drive himself to and from work, and decided to ride home with Gillund,

even though they were exhausted from working "long hours" due to the "inherent conditions and circumstances of their employment." *Id*. at 24.

Dixon, however, has not cited to a Montana case holding that an accident which occurs when an employee is driving home after completing a work shift and is not performing some work-related task "arises out of employment." Under such circumstances, an employee's injuries do not arise out of employment, but instead the conditions to which all individuals riding in a motor vehicle are exposed while commuting to and from work. *Heath*, 1998 MT 111, ¶¶ 2-6, 13-16, 23-25 (an injury does not "arise out of and in the course of employment" when an employee is traveling to and from work "when he is subjected only to the ordinary street hazards common to all pedestrians.") (quoting *Griffin v. Industrial Acc. Fund*, 111 Mont. 110, 115, 106 P.2d 346, 348 (1940)). In short, simply because Dixon was a minor and needed a ride to and from work did not change his circumstances such that his accident should be viewed any differently from every other Montana employee who needs similar transportation, whether a minor or otherwise. Nor is there any authority in Montana to support such a proposition.

### ii. The Phrase "In The Course Of Employment" Is Not Ambiguous And Refers To A Workplace Injury.

Dixon next argues that the phrase "in the course of employment" in the EL Section of the Policy is ambiguous and that it should be construed to provide coverage for an injury whether or not it occurs while the employee is fulfilling work

duties.  Doc. 29, pp. 13-15, 19, 23-24.  In conjunction with this argument, Dixon also contends that Rochdale has abandoned its Policy language and is instead asserting that coverage under its Policy is conditioned on an injury occurring "in the course and scope of employment." These arguments, however, are entirely without merit and cannot supplant the actual language in Rochdale's Policy or its clear meaning and application to the facts in the present case.

First, Dixon's argument that the phrase "in the course of employment" is ambiguous ignores the fact that the Supreme Court of Montana has already found that this phrase means:

> [T]he time, place, and circumstances of an injury in relation to employment. … The injury here was in the course of employment because it occurred on the employer's car lot, during work hours, when both Pinyerd and Jacobson were supposed to be performing work duties.

*Pinyerd*, 894 P.2d at 934.  The *Pinyerd* court did <u>not</u> find the phrase ambiguous, but instead recognized that it has a common sense meaning in the context of an employment accident.  *Id*.

Dixon nevertheless argues that under *Pinyerd* the Policy's dual requirements that an injury "arise out of and in the course of employment" should be construed synonymously to mean the same thing – that an injury must have a "reasonable connection" with employment.  Doc. 29, pp. 13-15, 19, 23-24.  Dixon, however, readily admits that the EL Section in Rochdale's Policy conditions coverage on two

separate requirements: "that the injury 'arise out of' and '*in the course of*' the injured employee's employment." *Id*. at 14 (emphasis in original).   In that regard, as discussed in Section (C)(i) *supra*, Dixon has already admitted that under *Pinyerd* "arising out of employment" means having a "reasonable connection" with employment.  As such, since the sentence at issue uses the conjunctive "and," these two phrases were meant to have two separate and independent meanings.  *Landeen v. Toole County Ref. Co.*, 85 Mont. 41, 54, 277 P. 615, 619-20 (1929) ("The terms 'arising out of' and 'in the course of' are used conjunctively, and, in order to satisfy the statute, both conditions must concur."); *Weeks v. State*, 1999 Mont. Dist. LEXIS 1121, **9-10 (finding that under *Pinyerd*, "The Montana Supreme Court has distinguished the elements of 'arising out of' and 'in the course of.'").

Moreover, Dixon's contention that "arise out of employment" has the same meaning as "in the course of employment" violates the rules of contract interpretation.  Under Montana law, an insurance policy should be read as a whole, giving effect to all of the policy's terms and their relationship with one another. *Newbury*, 184 P.3d at 1025.  Here, by asking this Court to construe both phrases as having the same meaning, Dixon is seeking to have Rochdale's Policy rewritten such that the phrase "in the course of employment" would be rendered meaningless or superfluous since the phrase "arise out of employment" already means having a "reasonable connection" with employment.  *Am. States Ins. Co. v. Flathead*

*Janitorial & Rug Servs.*, 2015 MT 239, ¶ 12, 380 Mont. 308, 311, 355 P.3d 735, 737-38 (an insurance policy should not be rewritten to create coverage that does not fall within the policy's terms).

Thus, "in the course of employment" should be construed based on its usual, common sense meaning. *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, ¶ 17, 326 Mont. 174, 180, 108 P.3d 469, 474 (policy terms should be construed according to their usual, common sense meaning). As courts in Montana and nationwide have found, the phrase "in the course of employment" refers to an injury that occurs while an employee is working for an employer. *Pinyerd*, 894 P.2d at 934-35; *Landeen*, 277 P. at 620 ("The term 'in the course of' refers to the time, place, and circumstances under which the accident took place; an accident arises in the course of the employment if it occurs while the employee is performing the duty which he is employed to perform … or 'if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.'") (quoting *Bryant* v. *Fissell*, 84 N.J.L. 72, 77 (N.J. 1913)); *Am. Railcar*, 2016 U.S. Dist. LEXIS 35196, **13-19 ("The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly."); *Lucas v. Lucas*, 212 Va. 561, 562-64 (Va. 1972) ("An injury occurs in the 'course of employment'

when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is fulfilling the duties of his employment or is doing something which is reasonably incidental thereto.").

For example, in *Glacier Park*, the court analyzed whether an employee's injury occurred "in the course of employment" such that he would be entitled to workers compensation. 768 P.2d at 348. The court analyzed the specific facts relative to the timing and circumstances of the employee's accident and injury, before finding that:

> The Workers' Compensation Court concluded that while it is "arguable that charging a car battery for a hotel guest might benefit the employer in some sense," it is clear to this Court claimant had deviated from the course of his employment. The accident happened nearly two and one-half miles from where claimant was supposed to be stationed. Claimant was driving a guest's car at dangerous speeds on a twisting mountain road in the dark of night, and was attempting to evade a law enforcement officer. Additionally, the injuries were the direct result of claimant's deviation from the course of his employment. As the Workers' Compensation Judge noted, "[t]he direct cause of claimant's injuries was his reckless abandonment of common sense . . ." The employer received no reasonably immediate service or benefit from the claimant's conduct and the claim for compensation was properly denied.

*Id*. Thus, since the employee was not working for his employer at the time of the accident, it did not occur "in the course of employment." *Id*.

Second, although Dixon bizarrely contends that Rochdale has abandoned its Policy language and is asserting that coverage is conditioned on the phrase "in the course and scope of employment," a review of Rochdale's Motion establishes that the exact opposite is true. Doc. 24, *generally*. Rochdale asserted on summary judgment that coverage under the Policy's EL Section turns on the sentence: "The bodily injury must arise out of and in the course of the injured employee's employment by you." Doc. 24, p. 11. Nowhere in Rochdale's Motion did it argue that coverage under its Policy is conditioned on an injury occurring "in the course and scope of employment." That is a misstatement of Rochdale's arguments.

It, therefore, should come as no surprise that Dixon's argument regarding Rochdale's so-called reliance on the phrase "in the course and scope of employment" is not based on the arguments that Rochdale is making on summary judgment, but instead on an allegation in Paragraph 38 of Rochdale's First Amended Complaint, which does <u>not</u> refer to or quote from Rochdale's Policy at all. Doc. 29, pp. 13-14. In fact, Paragraph 38 refers to the circumstances surrounding Dixon's accident inasmuch as it states that: "Dixon was not in the course and scope of employment at the time of [his] accident." Doc. 13, p. 11 ¶ 38. In contrast, Rochdale quoted the exact policy language that is at issue in this case in Paragraphs 32 and 37 of its First Amended Complaint, both of which state that: "The bodily injury must arise out of

and in the course of the injured employee's employment by you."  Doc. 13, pp. 9,
11.

What Dixon appears to misunderstand is that Paragraph 38 does not pertain to
the language in Rochdale's Policy, but instead to whether his accident and resulting
injuries occurred while he was performing some job function for his employer.  Doc.
13, p. 11 ¶ 38.  The relevance of this allegation goes to whether Dixon was working
for Felder when his accident occurred since the phrase "in the course of
employment" refers to an employee who is on-the-job when an injury happens.
*Pinyerd*, 894 P.2d at 934-35; *Landeen*, 277 P. at 620.

In fact, Rochdale has been very consistent with its position in this case that
there is no coverage for the Underlying Lawsuit when the facts surrounding Dixon's
accident and injuries are compared to the actual language in the EL Section of its
Policy.  Thus, Rochdale's use of the phrase "in the course and scope of employment"
in Paragraph 38 was parlance for whether Dixon suffered a workplace injury.  Nor
is the meaning of this allegation lost on Dixon considering his admission that "the
phrase 'course and scope' is a *term of art* used by a litany of … cases discussing the
scope of coverage" for a workplace injury under the WC Act.  Doc. 29, p. 14
(emphasis added).

Nonetheless, adding the word "scope" to the phrase "in the course of
employment" to make it "in the course *and scope* of employment" does not advance

Dixon's arguments when the existing language in Rochdale's Policy already has a clear and well understood meaning in the context of employment. *Ribi Immunochem*, 108 P.3d at 474 (policy terms should be given their usual, well understood meaning). It amounts to nothing more than an attempt to rewrite the language in Rochdale's Policy to expand coverage where it otherwise does not exist. *Flathead Janitorial*, 355 P.3d at 737-38.

Moreover, the word "scope" does not change the meaning of "in the course of employment" in the manner suggested by Dixon – *i.e.*, that without the word "scope" the phrase means having a "reasonable connection" with employment, as opposed to a workplace injury. The phrase "scope of employment" is defined as the range of authorized activities that an employee may engage in while performing his or her job, not whether that employee is actually working when an injury occurs in the first instance. *Bhd. Mut. Ins. Co. v. Ludwigsen*, 2018 U.S. Dist. LEXIS 150186, *23 (S.D.N.Y. Sep. 4, 2018) (finding that "scope of employment" is defined in Black's Law Dictionary (10th ed. 2014) as "[t]he range of reasonable and foreseeable activities that an employee engages in while carrying out the employer's business"); *Grider v. City of Auburn*, 618 F.3d 1240, 1261 n.32 (11th Cir. 2010) (same as *Ludwigsen*, but also finding that the definition of "scope of employment" includes "the field of action in which a servant is authorized to act in the master-servant relationship"). That is consistent with Montana's application of the phrase "scope

of employment." *Glacier Park*, 768 P.2d at 348 ("Essentially, claimant argues his job was to do anything to serve the guests. We reject this interpretation of claimant's scope of employment. Claimant was employed as a bellhop. He was not employed as a valet parking lot attendant, a mechanic, a delivery person or a race car driver. Claimant worked for a hotel, which was not in the automotive or delivery service.").

As well, the phrase "in the course and scope of employment" uses the word "and" which is a conjunctive, therein mandating that each term be given a separate meaning. Various courts have reviewed the differences between "course of employment" and "scope of employment" and concluded that they do not mean the same thing. *State Farm Mut'L. Auto. Ins. Co. v. Skones*, 2001 ML 2564, ¶ 4, 2001 Mont. Dist. LEXIS 3694, *2 (interpreting non-profit immunity statute and finding that "the term 'course' means 'accustomed procedure or normal action.' Likewise, the term, 'scope' means 'extent of treatment, activity or influence' or 'range of operation.'). For example, the Supreme Court of Minnesota found the following with respect to both phrases in the context of employment:

> "Scope of employment" is defined as "the field of action in which a servant is authorized to act in the master-servant relationship." Black's Law Dictionary 1374 (8th ed. 2004). "Course of employment" refers to "events that occur or circumstances that exist as a part of one's employment; esp., the time during which an employee furthers an employer's goals through employer-mandated directives." … Under the workers' compensation system, we have said that course of employment refers to the time,

place, and circumstances of the incident causing the
injury.

*Stringer v. Minn. Vikings Football Club, LLC*, 705 N.W.2d 746, 758 (Minn. 2005);

*Meeks v. Miller*, 956 So. 2d 864, ¶ 8 (Miss. 2007) (same as *Stringer*).

In sum, under *Pinyerd* and *Landeen*, "arise out of and in the course of
employment" means that an employee's injury must both have a reasonable
connection with employment *and* occur while the employee is performing work for
his or her employer.  Despite Dixon's suggestion otherwise, adding the word "scope"
to the Policy's existing language will amount to rewriting the Policy in violation of
the rules of contract interpretation and improperly adding a third condition, further
limiting coverage to only those work-related actions undertaken by a claimant which
were authorized at the time of an accident.  *Flathead Janitorial*, 355 P.3d at 737-38
(a policy should not be rewritten to find coverage).  As the language in Rochdale's
Policy has been examined by courts nationwide, this Court should reject Dixon's
argument that the phrase "in the course of employment" is ambiguous and instead
apply its common and well understood meaning to the facts in the present case.

    **iii.**    **The Word "Employment" Is Not Ambiguous And Refers To A Person Who Has A Job Performing Work For The Named Insured's Business.**

Dixon asserts that the word "employment" as it is used in the EL Section of
the Policy is ambiguous and that it is subject to two reasonable interpretations.  Per
Dixon, it could mean being "physically on the clock" or that "a person is still

employed." Doc. 29, pp. 15-16.  Dixon offers no case law or other legal support for this contention.  Nor is it an accurate statement of any position taken by Rochdale in this lawsuit.  Doc. 24, *generally*.  Instead, Rochdale has asserted that the sentence "arise out of and in the course of … employment" has consistently been interpreted by courts in Montana and nationwide to mean that an injury must occur when an employee is performing work for an employer.  *Id.*

Dixon's contention regarding the word "employment" plucks it out of the sentence at issue for the sole purpose of claiming an ambiguity where none exists at all.  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir. 2018) (recognizing that "a term is not ambiguous because of [d]isagreement concerning the meaning of a phrase, or the fact that a word or phrase isolated from its context is susceptible of more than one meaning.") (internal quotations omitted).   However, the word "employment" is not ambiguous as it is used in Rochdale's Policy.  It is a term of art in the legal world and has a common and well-understood meaning: "Work for which one has been hired and is being paid by an employer."  Black's Law Dictionary 641 (10th ed. 2014).  Similarly, Montana's unemployment insurance statute defines "employment" to include: "service by an individual … performed for wages or under any contract of hire, written or oral, express or implied."  Mont. Code Ann. § 39-51-203(1).  Thus, in the context of an insurance policy providing workers compensation and employers liability coverage for a named insured employer consistent with an

underlying statutory scheme (the WC Act), the word "employment" means that at the time of an accident the injured claimant was employed by the named insured to perform some type of work in exchange for compensation.

What Dixon appears to misapprehend is that the word "employment" as it appears in the sentence at issue in Rochdale's Policy is not meant to be construed by itself in a vacuum without reference to the words around it or the insurance contract in which it appears. *Newbury*, 184 P.3d at 1025. Instead, the word "employment" was clearly meant to modify the phrases "arise out of" and "in the course of" to give each of them an intended meaning. In turn, the phrases "arise out of employment" and "in the course of employment" qualify that an injury is only covered to the extent that it has a 'reasonable connection" with the claimant-employee's job for the named insured and, as well, that the injury occurred while that same employee was actually performing his or her job for the named insured. *Glacier Park*, 768 P.2d at 348. Any contention otherwise is both inconsistent with the clear policy language at issue and the case law addressing the meaning of these phrases in the context of a workplace injury.

**D.   The Evidence Surrounding Dixon's Accident Supports The Entry Of Summary Judgment For Rochdale.**

In Dixon's Statement of Disputed Facts, he does not contest any facts material to Rochdale's Motion. Doc. 28. Indeed, Dixon admits Paragraph Nos. 1-5, 7-10, 14-17 and 19 from Rochdale's Statement of Undisputed Facts ("SUF"). *Id*. In

addition, the parties also filed a Statement of Stipulated Facts, which addresses most of the facts in this lawsuit relative to the circumstances surrounding Dixon's accident.  Doc. 16.

At bottom, the basic facts pertaining to Dixon's accident remain undisputed, including the following:

- Dixon worked for Felder as a dishwasher and a prep cook.

- On August 30, 2014, Dixon started his normal shift at 4:00 p.m. At or around 12:50 a.m., he punched a timecard and clocked out from his work shift.

- On August 30-31, 2014, Gillund worked the same shift as Dixon and punched a timecard and clocked out from his shift at or around 12:52 a.m.

- The assistant manager closed the restaurant around 1:00 a.m. on August 31, 2014.

- After 1:00 a.m., Dixon got into Gillund's car and they drove away from the restaurant to go home.  They travelled north on U.S. Highway 93.

- The accident occurred around 1:15 a.m. approximately 4.2 miles from the restaurant at the Highway's intersection with Beaver Lake Road.

(Doc. 28, ¶¶ 4-5, 7-10, 15-19; Doc. 16, ¶¶ 8-15).  Thus, there is no dispute that the accident occurred after Dixon and Gillund had finished their work shifts, the restaurant was closed for the night, and they were traveling home.

Dixon nevertheless appears to take issue with SUF Paragraph Nos. 11-13 and 18. Doc. 28. For SUF Nos. 11 and 12, he does not offer any evidence beyond his own testimony, and only for the purpose of "context," even though that was already the factual basis for these paragraphs. Doc. 28, ¶¶ 11-12. Dixon, however, cannot dispute his own deposition testimony, and he makes it very clear that he "made [his] own decision" to "ride home with [Gillund]." *Id*. Dixon's additional testimony also confirms that he called his mother and told her that he had decided to ride home with Gillund. *Id*. As such, the facts in SUF Nos. 11 and 12 are undisputed.

With respect to SUF No. 13, Dixon did not dispute that Felder attested under oath that: "When Mr. Dixon and Mr. Gillund were done working, they clocked out and left the premises. They had no further job-related responsibilities to complete for the day after they clocked out and left." Doc. 28, ¶ 13. Dixon nevertheless stated that he "disputed … the truth of the matter asserted." *Id*. However, under L.R. 56.1(b)(1)(B), Dixon was required to do more than assert that certain facts are "disputed." He was obligated to "pinpoint cite to a specific pleading, deposition, answer to interrogatory, admission or affidavit before the court to oppose each fact." *Id*. As such, it is undisputed that Dixon was not performing any job-related duties after he left the restaurant to travel home on the night of the accident.

Finally, regarding SUF No. 18, Dixon offered his own testimony, as well as the so-called testimony of Gillund in an unsigned "Statement Under Oath"

("Statement"), in response to a factual contention from Rochdale on the cause, timing and location of the accident, as well as the fact that it resulted in Dixon's injury. Doc. 28, ¶ 18. However, Dixon did not refute anything asserted by Rochdale, but instead attempted to explain that the accident occurred because Gillund fell asleep. *Id*.

Dixon's submission of Gillund's Statement is strange considering that Gillund was in a coma for five days after the accident and experienced memory loss. Doc. 28-1, pp. 20:25-21:9. Gillund specifically stated that he did not dispute anything in Dixon's deposition other than his contention that Gillund fell asleep. *Id*. at 23:13-26:21. Gillund further stated that he would rely on Dixon's recollection regarding what occurred. *Id*. at 24:13-19.

Dixon cites at length to Gillund's Statement even though his testimony was not responsive to the factual contentions in SUF No. 18. Doc. 28, pp. 9-10. Gillund's Statement was not a deposition in which he was subject to cross-examination. Doc. 28-1. Nor was a proper foundation laid for much of his questioning, making Gillund's testimony inadmissible and objectionable as to the knowledge and actions of unnamed third-parties referenced in his testimony. Doc. 28, pp. 9-10. For example, Gillund repeatedly responds with the answer "Yeah" to questions about what "they knew" and vague references to "they're putting him in the car." *Id*. Who exactly the questioner is referring to, or Gillund is responding

about, is simply unknown.  Nor is any factual basis provided to substantiate his answers or to explain the basis for any personal knowledge.  Gillund's Statement, therefore, is objectionable, inadmissible and it is not competent evidence to avoid summary judgment.  Fed. R. Civ. P. 56(c)(2), (4); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003) (finding vague testimony insufficient to create fact issue to avoid summary judgment).

Even beyond these evidentiary deficiencies, Dixon cannot use Gillund's Statement to create an issue of material fact by contradicting his own testimony. While unclear, it appears that Dixon is proffering Gillund's testimony in response to SUF No. 18 as a basis to challenge the cause of the accident being someone other than Gillund and that Dixon would not have been in the car absent that unknown other person's actions.  Doc. 28, pp. 9-10.

In fact, Dixon alleged in his Second Amended Complaint that Felder was negligent by failing to provide him a ride home.  Doc. 23-1, pp. 4-5.  The evidence reveals that Dixon either rode home with his mom or Gillund.  Doc. 23-2, pp. 19:1-21:20; Doc. 28, p. 9.  Dixon further testified that he made the decision not to have his mom pick him up on the night of the accident, but to instead travel home after work with Gillund.  Doc. 23, ¶¶11-12.  Thus, Dixon's allegations are best understood as a failure on the part of Felder to arrange alternative transportation for him, as opposed to the ride he obtained from Gillund.  Doc. 23-1, pp. 4-5.

With that said, Dixon's Brief is silent on how Gillund's Statement or any other evidence raises a genuine issue of material fact that would defeat Rochdale's Motion on coverage under its Policy.  Certainly, Dixon's position is that Felder was negligent by scheduling him and Gillund to work long hours into the night despite their age and exhaustion. Doc. 29, p. 24.  He even cites to *Krushwitz v. McDonald's Restaurants*, 919 P.2d 465 (Ore. 1996) for the proposition that an employee may have the right to sue an employer when an accident is not compensable under the WC Act.  Doc. 29, pp. 17-18.

However, even if the facts in this case and *Krushwitz* support the assertion of a negligence claim against Felder, that does not change the basic facts surrounding Dixon's accident, or the fact that under Rochdale's Policy, Dixon was required to show that his injuries "[arose] out of and in the course of [his] employment."  While Dixon tacitly asserts the Policy is illusory because it does not cover his claim, he concedes that the facts surrounding his accident fall within the line of cases cited by Rochdale which demonstrate that an accident which occurs when an employee has clocked out from a shift and is heading home after work does not "arise out of or in the course of employment."  Doc. 29, p. 21.  Likely, that is because he understands that an accident during normal travel to and from work does not have a "reasonable connection" with employment, nor does it occur during the employee's performance of work for an employer.

In short, the facts surrounding his claim simply do not meet the conditions for coverage to exist.  Consequently, as Dixon had clocked out from work on the night of the accident and was traveling home after the restaurant was closed, his accident and injuries did not come within the coverage provided under the EL Section of Rochdale's Policy, therein precluding any coverage for the Underlying Lawsuit.

### III.   CONCLUSION

Based upon the facts of record and the arguments set forth above, Plaintiff Rochdale Insurance Company respectfully requests that this Court grant its Motion for Summary Judgment on Count I of Rochdale's First Amended Complaint for Declaratory Judgment, deny Dixon's Cross-Motion for Summary Judgment, and declare that there is no coverage under Rochdale's Policy for the Underlying Lawsuit.

DATED this 24th day of April, 2020.

CAPP, JENKS & SIMPSON, P.C.

By:   */s/ Fred Simpson*
         Fred Simpson

KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC

By:   */s/ Kevin M. Lougachi*
         Kevin M. Lougachi (*pro hac vice*)

         *Attorneys for Plaintiff,*
         *Rochdale Insurance Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that Plaintiff Rochdale Insurance Company's Combined Response/Reply Brief is in compliance with the Court's April 23, 2020 Order. The text is proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and word count calculated by Word 365 is <u>7,489</u> words, excluding the caption, Table of Contents, Certificate of Service, and Certificate of Compliance.

DATED this 24th day of April, 2020.

CAPP, JENKS & SIMPSON, P.C.

By: __/s/ Fred Simpson_____
       Fred Simpson

KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC

By: __/s/ Kevin M. Lougachi_____
       Kevin M. Lougachi (*pro hac vice*)

*Attorneys for Plaintiff*
*Rochdale Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify on this <u>24th</u> day of April, 2020, a copy of the foregoing document was served upon the following persons by the following means:

| | |
|---|---|
| <u>1-3</u> | CM/ECF |
| _____ | Mail |
| _____ | Hand Delivery |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | Email |

1.  Clerk, U.S. District Court

2.  Michael A. Bliven, Esq.
    BLIVEN LAW FIRM, P.C.
    704 S. Main Street
    Kalispell, MT 59901
    mike@blivenlawfirm.com
    *Attorney for Defendant Skylar Dixon*

3.  Dale R. Cockrell, Esq.
    MOORE, COCKRELL, GOICOECHEA & JOHNSON, P.C.
    145 Commons Loop, Suite 200
    P.O. Box 7370
    Kalispell, MT 59904-0370
    dcockrell@mcgalaw.com
    *Attorney for Defendant Felder & Company, LLC*
    *d/b/a Stillwater Fish House*

KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC

By: *  /s/ Kevin M. Lougachi  *
        *Attorneys for Plaintiff*
        *Rochdale Insurance Company*