IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROCHDALE INSURANCE COMPANY, | CV 19–68–M–DWM |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| SKYLAR DIXON and FELDER & COMPANY, LLC, dba STILLWATER FISH HOUSE, | |
| Defendants. | |

This coverage dispute arises out of a car accident that occurred after an employee completed his shift at a restaurant and was on his way home. The parties have filed cross-motions for summary judgment on the question of whether the employee's injuries arose out of and in the course of his employment. (Docs. 22, 27.) Because they did not, summary judgment is granted in favor of the plaintiff.

## BACKGROUND[1]

### I.    The Accident and Underlying Case

On August 20, 2014, 15-year-old Skylar Dixon was employed by Felder & Co. as a dishwasher and prep cook at Stillwater Fish House, its restaurant in

---

[1] The facts are undisputed unless otherwise noted. (*See* Docs. 21, 28.)

1

Whitefish, Montana. (Doc. 21 at ¶ 3(h); Doc. 23-2 at 3; Doc. 28 at ¶ 5.) That day, he began his shift at 4:00 p.m. and clocked out around 12:50 a.m. (Doc. 21 at ¶ 3(i), (j).) He then accepted a ride home from his co-worker and friend, Noah Gillund. (*Id.* at ¶ 3(k), (l), (o); Doc. 28-1 at 41.) On the way, Gillund lost control of the vehicle, resulting in a single-car roll-over accident. (Doc. 21 at ¶ 3(o); Doc. 28-1 at 73, 75.) The accident took place around 1:15 a.m. approximately 4 miles north of the restaurant on Highway 93. (*See* Doc. 28-1 at 73; Doc. 28 at ¶¶ 18, 19; Doc. 23-4 at 3.) Dixon was injured, (Doc. 21 at ¶ 3(o)), and ultimately lost his left leg, (*see* Doc. 28-2 at 21). He unsuccessfully submitted a workers' compensation claim to Rochdale Insurance Company. (Doc. 21 at ¶ 3(p).) On August 24, 2015, the Montana Department of Labor and Industry Employment Rights Division ("the Department") held a mediation. (*Id.* at ¶ 3(q).) The Department agreed with Rochdale, (*id.*), and Dixon did not petition the Workers' Compensation Court for further review of the denial, (*id.* at ¶ 3(r)).

On August 30, 2017, Dixon filed suit against Felder & Co., alleging claims of negligence and negligence per se and requesting declaratory judgment (the "Underlying Lawsuit"). (Doc. 13-1; Doc. 21 at ¶ 3(d).) Felder & Co. tendered the Underlying Lawsuit to its general liability insurer, American Hallmark Insurance Company of Texas ("American Hallmark"). (*See* Doc. 28-2 at 1.) American

2

Hallmark defended Felder & Co. subject to a reservation of rights.[2]  (*See generally id.*)  Dixon filed his First Amended Complaint in the Underlying Lawsuit on June 21, 2019, alleging a single count of negligence.  (Doc. 13-2; Doc. 23-1.)  He alleges that his injuries were caused by his and Gillund's unreasonably long and late work hours.  (*See id.*)

## II.  The Rochdale Policy and Present Case

Rochdale issued Felder & Co. a Workers Compensation and Employers Liability Policy (No. RWC3318979) effective March 21, 2014 to March 21, 2015 (the "Policy").  (Doc 21 at ¶ 3(t); Doc. 13-3.)  The Policy includes coverage for bodily injury that arises out of and in the course of an injured employee's employment, subject to certain exclusions.  (Doc. 13-3 at 9–10.)  On April 17, 2019, Rochdale filed this action, seeking a determination that Dixon was not in the course of his employment at the time of the accident (Count One) and that two exclusions bar coverage (Counts Two and Three).  (Docs. 1, 13.)  In its present motion, Rochdale seeks summary judgment on Count One and a declaration that it

---

[2] The parties dispute whether Dixon recovered from American Hallmark.  Dixon states that American Hallmark denied his claim, (Doc. 28 at ¶ 20), but the cited exhibit is merely a reservation of rights letter, (*see* Doc. 28-2).  On the other hand, Rochdale argues that Dixon recovered $600,000 from American Hallmark and $25,000 under Gillund's automotive policy.  (*See* Doc. 36 at 9; Doc. 28-1 at 31.)  In his reply, Dixon maintains that "American Hallmark denied its [comprehensive general liability] policy applied[,]" but then states that "the $600,000 he received was not a meaningful remedy."  (Doc. 37 at 3, 9–10, 11, 14.)

does not have a duty to defend or indemnify Felder & Co in the Underlying Lawsuit. (Doc. 22.) Dixon filed a cross-motion for summary judgment, (Doc. 27), and Felder & Co. filed a notice taking no position on the motions, (Doc. 30).

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material if they have the potential to affect the outcome of the case and there is sufficient evidence for a jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). On cross-motions for summary judgment, it is the court's "independent duty to review each cross-motion and its supporting evidence . . . to determine whether that evidence demonstrates a genuine issue of material fact." *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1137 (9th Cir. 2001). Each motion is therefore evaluated separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016).

## ANALYSIS

### I.    Montana Law

As the forum state, Montana law applies in this diversity action. *Med. Lab. Mgmt. Consult. v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). "The

duty to defend arises when a complaint against an insured alleges facts which, if proved, would result in coverage." *Tidyman's Mgmt. Servs. Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014). "It is independent from and broader than the duty to indemnify created by the same insurance contract." *Id.* (internal quotation marks omitted). "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). The duty to indemnify, on the other hand, "arises only if coverage under the policy is actually established." *St. Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 410–11 (Mont. 2013). Ordinarily, if there is "no duty to defend, it follows that there can be no duty to indemnify." *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 364 (Mont. 2005) (internal quotation marked omitted); *but see Troutt v. Colo. W. Ins. Co.*, 246 F.3d 1150 (9th Cir. 2001).

"The interpretation of an insurance contract is a question of law." *United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260, 1265 (Mont. 2009). "[W]hen the language of a policy is clear and explicit, the policy should be enforced as written." *Id.* Giving the words of a contract their ordinary meaning, insurance policies are strictly construed against the insurer in favor of the insured. *Travelers Cas. & Sur. Co v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005). Ambiguity exists, when taken as a whole, an insurance contract is

5

reasonably subject to two different interpretations. *Id.* Ambiguous contract language is interpreted to provide coverage. *Id.*

## II.    The Policy

The Policy includes two interrelated types of insurance coverage for an employer when an employee is injured on the job: Part One – Workers Compensation Insurance and Part Two – Employers Liability Insurance. The Workers Compensation section only provides coverage for a work-related accident that falls under an employer's statutory obligation to pay workers' compensation benefits. (*See* Doc. 13-3 at 8.) Dixon did not petition for review of the Department's denial of his workers' compensation claim. (Doc. 21 at ¶ 3(r).) Thus, Dixon agrees that the Workers Compensation section of the Policy does not apply. (*See* Doc. 29 at 6, 15.) Consequently, for coverage to exist, Dixon's claim must fall within the Employers Liability section of the Policy. Pursuant to that section, there is coverage for "bodily injury by accident," but the injury "must arise out of and in the course of the injured employee's employment." (Doc. 13-3 at 9.) Dixon challenges Rochdale's denial of coverage on the grounds that the Policy is ambiguous and violates Montana's public policy.

### A.    Ambiguity

Dixon first argues that the terms "arising out of" and "course of employment" are ambiguous and therefore must be construed in favor of coverage.

6

In response, Rochdale argues that the policy language unambiguously requires an injury to be related to an employee's job duties.  Rochdale has the better argument.

### 1.    Applicable Legal Authority

As a threshold issue, the parties dispute whether the Court should consider legal authority interpreting the "arising out of and in the course of employment" language contained in Montana's Workers' Compensation Act, Mont. Code Ann. § 39–71–407.  Dixon's primary argument on this front, however, is his mistaken belief that the relevant workers' compensation law mandates "course *and scope*" language.  (Doc. 29 at 13–15.)  To the contrary, the Workers' Compensation Act language is consistent with the language in Rochdale's Policy.  In his reply, Dixon pivots and argues that Montana caselaw addressing "arising out of" in the insurance context is more applicable than caselaw addressing "arising out of and in the course of employment" in the workers' compensation context.  (*See* Doc. 37 at 8.)  While this Court is bound to apply interpretational guidelines imposed by the Montana Supreme Court, this does not preclude considering judicial interpretation of identical language in the workers' compensation arena.  *See, e.g., Troutt*, 246 F.3d at 1160 (case involving liquor policy where Ninth Circuit relied on interpretational guidance from Montana workers' compensation case).

### 2.    "Arising out of"

Dixon first argues that "arising out of" is always ambiguous in the insurance

context and therefore must be construed in favor of coverage here. *See Troutt*, 246 F.3d at 1160; *Pablo v. Moore*, 995 P.2d 460, 462–63 (Mont. 2000). Rochdale, on the other hand, argues that the only reasonable reading of "arising out of" in this context is to have "some reasonable connection with," which is consistent with its definition under the Workers' Compensation Act. *See Pinyerd v. St. Comp. Ins. Fund*, 894 P.2d 932, 935 (Mont. 1995). Rochdale has the better argument. While both *Troutt* and *Pablo* recognized the inherent ambiguity of the term "arising out of," the court in *Troutt* adopted *Pinyerd*'s "reasonable connection" definition. *See* 246 F.3d at 1160. In order for the term to be ambiguous, Dixon must show it is subject to another reasonable interpretation. He has not done so, primarily because it is not clear what interpretation Dixon endorses. In his response brief, he does not propose an interpretation, but merely relies on the inherent ambiguity language in *Pablo* and *Troutt*. (Doc. 29 at 10–13.) It is for the first time in his reply that he argues "arises out of" could mean either "due to something that happened at work even if the injury occurs after 'clocking out,'" or that "the injury must occur during work hours and on the job." (Doc. 37 at 5.) But neither of these interpretations is incongruous with *Troutt*'s "reasonable connection" interpretation.

Dixon also attempts to limit "arising out of" to a but-for causation standard. But such a reading ignores the requirement that the language be read in conjunction with the phrase "course of employment," which cabins its possible

8

meaning in the employment context. *See Ribi*, 108 P.3d at 474 (requiring that

contract be "taken as a whole" in assessing ambiguity). "The phrase 'arising out

of' is related to the concept of causation," *Pinyerd*, 894 P.2d at 934, and "is

descriptive of the relation which the injury bears to employment," *Landeen v.*

*Toole Cty. Refining Co.*, 277 P. 615, 620 (Mont. 1929). Both elements must

therefore be considered. *Id.*

### 3.   "Course of Employment"

Dixon further argues that the term "course of employment" is ambiguous

because it could be reasonably interpreted to merely require that an employee be an

employee of the business at the time of the injury. Rochdale, on the other hand,

insists that it unambiguously requires an employee be performing a job duty for the

employer. Rochdale once again has the better argument. The mere fact of

employment does not reasonably equate to "course of employment." Under

Montana law, "[t]he language 'in the course of employment[]' generally refers to

the time, place, and circumstances of an injury in relation to employment."

*Pinyerd*, 894 P.2d at 934. "[A]n accident arises in the course of employment if it

occurs when the employ[ee] is performing the duty which he is employed to

perform." *Landeen*, 277 P. at 620. Dixon's interpretation would divest "course

of" from any meaning and is therefore not reasonable. *See Griffin v. Indus.*

*Accident Fund*, 106 P.2d 346, 348 (Mont. 1940) ("The employer is not an insurer

of his employees at all times during the period of employment.").

Ultimately, Dixon's attacks on the component parts of the phrase "arising out of and in the course of employment" are not reasonable when the phrase is considered in its entirety. *See Landeen*, 277 P. at 619 (highlighting conjunctive language). The Policy language is not ambiguous and is interpreted consistent with its plain meaning to require a reasonable connection between an injury and the employee's job duties.

## B.   Public Policy

Dixon further argues the language is void as a matter of public policy because it makes coverage illusory and defeats reasonable consumer expectations. "A policy is illusory if it defeats coverage for which the insurer has received valuable consideration." *Cross v. Warren*, 435 P.3d 1202, 1209 (Mont. 2019) (cleaned up). Here, Rochdale admits coverage under the Employers Liability section is subject to "virtually identical language" as the Workers Compensation section. (Doc. 36 at 11.) Dixon argues this concurrent application renders coverage under the Employers Liability section illusory. But the two coverages are not entirely concomitant. For example, if an employee broke his or her arm while operating a dishwasher, the Workers Compensation section would generally cover the medical bills from the injury and possibly loss of income during recovery without any regard for fault. But, if before the injury the employee had reported

that the dishwasher was broken and the employer had not yet replaced it, coverage for that alleged negligence would arise under the Employers Liability section, not the Workers Compensation section. Because the Employers Liability section provides unique coverage, even if it does not do so here, it is not illusory.

Nor does the Policy violate the reasonable expectations of the insured. The Employers Liability section demonstrates a "clear" intent to limit coverage to the employment context. *Fisher ex rel. McCartney v. St. Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 867 (Mont. 2013). There is nothing unusual about this type of insurance or the language of this particular policy that alters the scope of coverage. Dixon argues that the Employers Liability section must apply because if it does not, then there is no coverage under any policy. (Doc. 37 at 3.) But this argument is a non sequitur. The absence of coverage under other policies or provisions does not somehow create coverage where it would not otherwise exist. Moreover, it appears that Dixon *did* receive payment from both Gillund's automobile insurance and Felder & Co.'s general insurer. *See supra*, n.2. Based on the foregoing, Dixon's public policy arguments fail.

**C.    Application of the Policy**

Finally, Dixon argues that if the Policy applies as written, his injury arose out of and in the course of his employment because but-for his employment and the long, late hours, he would not have been in the accident. But there is no

11

reasonable connection between the car accident and Dixon's employment as a dishwasher and prep cook at the Fish House.  It is undisputed that Dixon was injured after he clocked out of work while in a private vehicle driven by his friend miles from the restaurant.  The only connection between the injury and his employment is the fact that he was on his way home from his shift.  Under Montana's Workers' Compensation Act, travel to and from work is generally excluded from coverage unless the employer furnishes the transportation, reimburses the employee for travel expenses, or the travel is required as part of an employee's job duties.  *See* § 39–71–407(4)(a).  This is known as the "going and coming" rule.  *See Heath v. Mont. Mun. Ins. Auth.*, 959 P.2d 480, 482 (Mont. 1998).  Though Dixon's claim under Rochdale's Policy is not bound by the limitations of the workers' compensation statute, the principles underlying the "going and coming" rule evidence the disconnect between work duties and an employee's commute.  Notably, "going to and from work does not in itself provide a special benefit to the employer." *Id.* at 483.  This principle has been embraced in the employer liability coverage context for decades.  *See, e.g., St. Comp. Ins. Fund v. Batis*, 183 P.2d 891, 892 (Colo. 1947); *London Guarantee & Accident Co. v. Frazee*, 185 P.2d 284, 288 (Utah 1947); *Griffin*, 106 P.2d at 348.  In contrast, in *Pinyerd*, the Court determined a fight between two car salespersons arose out of and in the course of their employment "because it occurred on the employer's car

12

lot, during work hours, when both [employees] were supposed to be performing work duties." 894 P.2d at 934. Here, there is no overlap between location, timing, or employment duties.

The fact Dixon is a minor does not change the result. In a motion to supplement, (*see* Doc. 38), Dixon cites a California case wherein a 16-year-old pizza parlor employee was injured in a car accident while driving home from work long past the legal hours minors were allowed to work, *Johnson v. Stratlaw, Inc.*, 224 Cal. App. 3d 1156, 1158–59 (1990). The court determined his injuries arose out of and in the course of his employment based on the "special risk" exception to the "going and coming" rule. *Id.* at 1164. Under that exception, "[a]n employee will be entitled to compensation, if the employment creates a special risk, for injuries sustained within the field of that risk" even if the employee is not on an employer's premises. *Id.* at 1161 (internal quotation marks omitted). The exception will apply "(1) if 'but-for' the employment the employee would not have been at the location where the injury occurred and (2) if the risk is distinctive in nature of quantitatively greater than risks common to the public." *Id.* (internal quotation marks omitted). The *Johnson* court ultimately determined that a minor injured on his commute home from employment where his employer kept him at work beyond legal hours qualifies as a "special risk" because it was distinct from the risks posed to the general public. *Id.* at 1163. Here, as in *Johnson*, it is

13

undisputed that but for his employment at the Fish House, Dixon would not have been on the road that night and Dixon alleges he was required to work longer and later than state law allowed.  However, Montana has not adopted the "special risk" exception.  To the contrary, Montana has explicitly stated its non-recognition of a "special hazard" doctrine.  *See Heath*, 959 P.2d at 484.  Accordingly, the proffered supplemental authority does not affect the outcome.

Based on the "particular facts and circumstances" of this case, *Pinyerd*, 894 P.2d at 935, Dixon's injuries are not covered by Rochdale's Policy.  As a result, Rochdale had neither a duty to defend nor indemnify Felder & Co.

## CONCLUSION

IT IS ORDERED that Rochdale's motion for summary judgment (Doc. 22) is GRANTED and Dixon's cross-motion (Doc. 27) is DENIED.

IT IS FURTHER ORDERED that Dixon's motion to supplement (Doc. 38) is DENIED as MOOT.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment consistent with this Opinion and Order and close the case.

DATED this ___ day of June, 2020.

10:37 AM

Donald W. Molloy, District Judge
United States District Court

14